Debtor Name:  Jacqueline Cash and Eric Reid                    Case Number: 21-10475-BAH

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                    CHAPTER 11

**JACQUELINE CASH and**                    Case No.  21-10475-BAH
**ERIC REID**

      Debtors

                                         _XX_ Check if this is an amended filing.

Modeled on Official Form 425A
_____

## DEBTORS' PLAN OF REORGANIZATION FOR SMALL BUSINESS
## UNDER CHAPTER 11 DATED MAY 5, 2022
## AS MODIFIED ON MAY 24, 2022
_____

## ARTICLE I: INTRODUCTION

    **A.**    **Certain Definitions.**  The word, term or phrase:

        **1.**    All capitalized words, terms and phrases are defined in the Glossary filed herewith and shall have and be given the same meaning whenever and wherever used herein.

        **2.**    Except as otherwise defined herein, all words, terms and phrases defined in the Code and Rules shall have and be given the same meaning when used herein.

        **3.**    Unless otherwise required by the context in which used, words, terms and phrases commonly used in Chapter 11 bankruptcy cases shall be given their customary and usual meanings, including without limitation, the following terms of art: disputed, dividend and distribution (which are synonyms), executory contract, final order, liquidation value, final order, order, petition and petition date, priority claim, rejection and rejection claim, reorganization value, secured claim, unexpired non-residential lease and unsecured claim.

    **B.**    **Plan Overview.**

        **1.**    Under this Plan, all creditors will be divided into the Classes described in this Plan.  The Debtors will devote and use their disposable income to pay dividends due secured and unsecured creditors holding Allowed Claims in accordance with the provisions hereof.  Classes 2, 3,

4, 5, 6, 7A and 7B are Mandatory Payment Classes, which means that the dividends due creditors holding Allowed Claims in those Classes must be paid within 15 days of the due date thereof under this Plan without regard to the amount of Available Disposable Income on the payment date.  All other Classes are Available Disposable Income Classes, which means that their distributions will be paid from Available Disposable Income if and to the extent available at the end of any calendar year.

      2.     Projected Dividends.  Based on the Financial Projections attached as Exhibit D, the Debtors expect that creditors holding Allowed Claims in the following Classes will be paid dividends in the following aggregate amounts over the Plan Term:

     **a.**    Class 1 is expected to be paid $71,566.20.

     **b.**    Class 2 is expected to be paid $49,398.90.

     **c.**    Class 3 is expected to be paid $94,879.86.

     **d.**    Class 4 is expected to be paid $56,865.30.

     **e.**    Class 5 is expected to be paid $61,339.74.

     **f.**    Class 6 is expected to be paid $0.00.

     **g.**    Class 7A is expected to be paid $72,808.20.

     **h.**    Class 7B is expected to be paid $31,949.28.

     **i.**    Class 8 is expected to be paid $19,677.54.

     **j.**    Class 9 is expected to be paid $0.00.

      3.     Significant Property of the Estate.  Under the Plan, the Debtors will retain all of the property of the estate and their homestead and other rights therein under applicable state law and this Plan subject only to the liens preserved hereby.  The following property of the estate is worth more than $5,000 in the Debtor's judgment:

     **a.**    The Real Properties located in Epsom, New Hampshire commonly known and numbered as 102 Lockes Hill Road, 111 Lockes Hill Road  and Lockes Hill Rd Lot 13 1-2; and

      **a.**      The construction equipment, motor vehicles and other personal property described in Exhibit B, Hypothetical Liquidation Summary Based on Significant Property of Estate.

      **b.**      The net proceeds of the settlements with Chinn Legal Group, LLC d/b/a Slate Legal Group and Bechara El-Khoury and any underinsured motorist claim against the Debtors' insurer.

      **c.**      The so-called Farm Patronage Credit due the Debtors, which is a cash equivalent that be applied only to the reduction of the Farm Claims.

      **2.**      Under this Plan, except as provided herein, Allowed Secured Claims held by any Farm, Brigham Trust, Citizens Bank, Bank of America, Harley Credit, USAA Federal, and South Shore - Bankers or any other secured creditor shall be limited in amount to the value of the secured creditor's interest in the Debtors' interest in the Collateral securing the payment of their secured claims (net of any applicable homestead exemption) or disallowed in their entirety if their interests have no value.

      **B.**      **Exhibits.**  The following exhibits are attached hereto and incorporated herein by reference:

Exhibit A:      Class, Class Creditors and Projected Dividend Summary, which does not include interest to be paid on Allowed Secured Claims

Exhibit B:      Hypothetical Liquidation Summary based on property of estate with significant value

Exhibit C:      Comparison of Projected Plan Dividends to Projected Liquidation Distributions, which is based on Estimated Allowed Claims shown in Exhibit A.

Exhibit D:      Financial Projections, which projects interest to be paid on Allowed Secured Claims.

## ARTICLE II: BACKGROUND FOR CASES FILED UNDER SUBCHAPTER

      **A.**      **Required Background Information.**  Since this Plan is for the Debtors, who are individuals and small business debtors under Subchapter V, Subchapter V of Chapter 11 of the

Code (11 U.S.C. § 1190 et seq.) requires the inclusion of (1) a brief history of the business operations of the Debtors, (2) a liquidation analysis; and (3) projections with respect to the ability of the Debtors to make payments under the proposed plan of reorganization.

**B.      Brief History of Debtors Business and Business Operations.**  The Debtors are a married couple and hold title to most of the property of the estate as joint tenants with rights of survivorship.  Dr. Cash is a practicing dentist, who is employed by 42 North Dental.  Dr. Cash and Mr. Reid are also engaged in the business of real estate development on a small scale.  While they obtain subdivision approval, Mr. Reid will continue to raise and sell stone veneer harvested from the Real Properties and sell hay after all stone has been removed and hay has been planted, which is the primary source of the income shown for him in Exhibit D.

**C.      Principal Reason for Reasons for Reorganization Case.**

1.      The Debtors tried very hard to avoid seeking protection under the Bankruptcy Code, primarily due to the cost and expense of a reorganization proceeding.  Dr. Cash had to close an unsuccessful dental practice, which had accumulated significant debt.  Mr. Reid had to close an unsuccessful construction company and Mr. Reid was injured in an automobile accident approximately twenty-two (22) months ago on December 28, 2019 and has not been able to work steadily since the accident.

2.      Before the Petition Date, the Debtors retained Slate to negotiate settlements with creditors.  Slate required the Debtors to make periodic deposits to a so-called "designated account" to fund the payment of legal fees and settlements.  The Debtors mistakenly believed that the designated account had approximately $45,000 on the petition date.  Slate subsequently claimed that it had only $6,300.  The Slate Deposits prevented the Debtors from making payments due other secured and unsecured creditors.  When Slate refused to account for and turnover the designated account deposits to the Debtors, the Debtors filed the Slate Turnover Action.

3.      On information and belief, Slate negotiated and paid three (3) small settlements for the Debtors.  Slate refunded slightly more than $6,300 from the initial Slate Deposits.  The balance had been applied to pay Slate fees, costs and expenses.  On March 10, 2022, the Bankruptcy Court approved the Slate Settlement pursuant to which Slate paid the Debtors $42,500 in addition to the $6,300 previously refunded to the Debtors from the designated account.

4.      The Debtors could not reach a debt restructuring agreements with Brigham Trust, which was about to foreclose its mortgage on one or more of the Real Properties.  Believing that they could restructure their debt and make significant repayments to creditors on account of Allowed Claims, the Debtors decided to commence this case.

**D.      Reorganization and Liquidation Values of Real Properties.**  For the purposes of this Plan, the Debtor values the Real Properties in their present condition as follows:

1.      The Debtors' Homestead Premises [102 Lockes Hill Road] at $600,000 on a reorganization value basis and $333,000-$444,000 on a liquidation basis in its current unfinished condition.

2.      The Lot [Lockes Hill Rd R 13 1-2] at $60,000 on a reorganization value basis and $33,300-$44,400 on a liquidation basis.

3.      The Rental Property [111 Lockes Hill Road] at $300,000 on a reorganization value basis and between $180,000-$240,000 on a liquidation value basis.

**E.      Hypothetical Liquidation Analysis, Exhibit B.**

1.      To confirm this Plan, the Court must find that all creditors and equity interest holders who do not accept this Plan will receive at least as much under this Plan as such creditors and equity interest holders would receive in a hypothetical liquidation of the property of the estate in a Chapter 7 case.  Attached as Exhibit B is the analysis of the Hypothetical Liquidation required by the Code.

2.      The Hypothetical Liquidation Analysis is based on the assumptions disclosed in the Notes to Exhibit B.

**F.      Comparison of Hypothetical Liquidation Recoveries to Projected Plan Dividends, Exhibit C.**

1.      Exhibit C, which is titled Comparison of Projected Plan Dividends to Projected Liquidation Distributions Based on Estimated Allowed Claims compares the dividends projected to be paid creditors Allowed Claims under this Plan to the amount of their projected liquidation recoveries.  The Exhibit does not include the interest that will be paid to creditors holding Allowed Secured Claims.  If the interest is included, the Exhibit shows that each Class of creditors will receive more under this Plan than the Class would receive in a liquidation.

2.      As shown by Exhibit C, the Debtors project on a Class-by-Class basis, each creditor holding an Allowed Claim in a Class will receive more money under this Plan than from the Hypothetical Liquidation.

### G.      Ability of the Debtors To Make Payments Under Proposed Plan.

1.      In Exhibit D, Financial Projections, the Debtors provide parties in interest with the Debtors' expected income and expenses over the Plan Term.  The Financial Projections were prepared by Mr. Reid and Dr. Cash.  Among other things, they assumed that:

a.      Dr. Cash's income will not change significantly over the Plan Term.

b.      Mr. Reid will recover approximately $15,000 by way of a settlement of the Reid Personal Injury Claim subject to the approval of the Court.

c.      The Debtors will recover approximately $48,800 by reason of the Slate Settlement, up to 40,000 of which will be applied in reduction of the Allowed Farm Secured Equipment Claim.

d.      The Farm Patronage Credit will be applied in reduction of the Farm Allowed Secured Equipment Claim.

e.      Mr. Reid and Dr. Cash will earn the money projected in Exhibit D.

f.      The Debtors will receive $1,800 per month as rent for Rental Property from Mr. Reid's parents as shown in Exhibit D.

2.      The Debtors believe that the assumptions underlying the Financial Projections are reasonable under the circumstances.  Based on the assumptions, the Financial Projections demonstrate that the Debtors will be able to make the payments required by this Plan.

## ARTICLE III: PLAN SUMMARY

A.      **Source of Plan Payments.**  This Plan, filed under chapter 11 of the Code, proposes to pay creditors holding Allowed Claims from the following sources: (1) the Slate Turnover Action and (2) the Reid Personal Injury Claim and (3) the Debtors' disposable income earned during the Plan Term.

B.      **Number of Plan Classes by Code Category.**  This plan provides for:

Debtor Name:  <u>Jacqueline Cash and Eric Reid</u>                                    Case Number: <u>21-10475-BAH</u>

**1.**     1          Class of priority claims;

**2.**     7          Classes of secured claims;

**3.**     2          Class of non-priority unsecured claims; and,

**4.**     0          Class of subordinated claims.

**5.**     This plan also provides for the payment of administrative expense and priority claims in full although some of the Allowed fees may be paid over time with the consent of the holder or holders of the administrative expense claims therefor.

**6.**     General Unsecured Creditors holding Allowed Claims will receive distributions, which the proponent of this Plan projects to be approximately $19,677.54 (approximately $0.10 on the dollar).

**7.**     All creditors and equity security holders should refer to Articles IV and V of this Plan for information regarding the precise treatment of their claim.

**8.**     **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney if you have one.  (If you do not have an attorney, you may wish to consult one.)**

**C.**     **Classification of Claims and Interests.**  The Confirmation of this Plan will create the following Classes of unclassifiable claims and claims:

Class 1 – Priority Administrative Expense Class.  This Class includes claims that are unclassfiable under the Bankruptcy Code.  To facilitate describing the distribution of disposable income pursuant to this Plan, however, this Plan treats the claims in this administrative expense claims as a Class even though such claims are not "Classifiable" under the Code.

Class 2 - Farm Secured Equipment Claims Class.

Class 3 - Farm Secured Mortgage Claims Class.

Class 4 - Citizens Secured Mortgage Claims Class.

Class 5 - Brigham Trust Secured Mortgage Claim Class.

Class 6 - Cheesman Secured Claim Class.

Class 7A - Minor Secured Claims with Modified Maturity Dates Class.

Class 7B - Minor Secured Claims without Modified Maturity Dates Class.

Class 8 - General Unsecured Claims Class.

Class 9 –Cheesman Unsecured Claim Class.

## ARTICLE IV: TREATMENT OF UNCLASSIFIED CLAIMS

A.     **Unclassifiable Claims**.  Under Section § 1123(a)(1) of the Bankruptcy Code, claims for administrative expenses, statutory and quarterly fees,  "gap" period claims in an involuntary case Allowed under § 502(f) of the Code, and priority tax claims are not classifiable.  In order to account for these claims and their impact on disposable income and Available Disposable Income the payment priorities afforded them under the Bankruptcy Code, the Debtors elected to create Classes that include them.

B.     **Class 1 – Priority Administrative Expense Claims.**

__x__  Impaired                                    __ __  Unimpaired

**Class Description.**  This Class includes all Priority Administrative Expense Claims asserted against the Debtor by professional and non-professional Administrative Expense Creditors, including without limitation, those identified in Exhibit A, Priority Administrative Expense Creditors and Claims, to the extent Allowed or approved by the Bankruptcy Court.  The only known Priority Administrative Expense Claims are the claims held by the Subchapter V Trustee and the Debtors' Counsel, which are estimated to be $20,000 and $85,000, respectively.  The Debtors do not believe that there are or will be any statutory or quarterly fees required to be paid under 28 U.S.C. § 1930 on the Effective Date.

**Treatment.**

1.     The Allowed Priority Administrative Expense Claims in this Class shall be paid  in full in cash to the extent possible from the Debtor's cash on hand on the Effective Date, including the net proceeds of the Slate Settlement and Reid Personal Injury Claim remaining after the Debtors have made the  payment due Farm therefrom.  Such cash on hand shall be paid to the Subchapter V Trustee in satisfaction or reduction of his Allowed Claim, which is estimated to be $20,000 before any payment shall be made to the Debtors' Counsel.  If there should be any remaining cash on hand, it may be paid to Debtors' counsel in reduction the Allowed Claim held by Debtors' Counsel.

2.      If any Allowed Priority Administrative Expense Claim cannot be paid in full on the Effective Date and/or the holder of Allowed Claim elects to accept less favorable treatment, the Debtors shall execute and deliver to each holder of such a claim (1) a promissory note for the unpaid balance thereof, with interest at the rate of 4% per annum, in 36 consecutive monthly installments beginning on the 60th day following the Effective Date, (2)  a statutory power of sale mortgage on the Debtors' Real Estate and (3) a security agreement that grants each Allowed Priority Administrative Expense Creditor security interests in and to the Debtors' personal property, including without limitation, second priority security interests in the Farm Equipment Collateral, financing statements, certificates of title to vehicles and such other documents as are customarily and usually executed in similar transactions.  Each mortgage granted pursuant to this Paragraph shall include a waiver of Debtors' homestead rights under applicable non-bankruptcy law.  The liens granted the holder of an Allowed Administrative Expense Claim shall be junior and subordinate to any liens thereon to the extent preserved by this Plan.

## ARTICLE V: TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

A.      **Class 2 – Farm Secured Equipment Claims Class**.

__x__ Impaired                                    __ __ Unimpaired

**Class Description.**  The only claim included in this Mandatory Payment Class is the Farm Secured Equipment Claim, which includes part of the claims asserted by Farm in the Farm Proof.  The claims in this Class are secured by first priority liens on the Farm Equipment Collateral.  For the purposes of this Plan, the Debtors value the Farm Equipment Collateral at (a) $105,000 on a reorganization value basis and (b) $73,500-$52,500 on a liquidation basis based on publications that value used equipment.

**Treatment.**

1.      Subject to the further terms of this Section, Farm Secured Equipment Claim shall be Allowed on the Effective Date of this Plan in such amount as may be agreed to by this parties in the Confirmation Order or the amount set by the Bankruptcy Court if they cannot agree.  If the parties acting in good faith and dealing fairly with each other cannot agree, the dispute shall be subject to Judicial Mediation as provided for in this Plan.

Debtor Name:  Jacqueline Cash and Eric Reid                                    Case Number: 21-10475-BAH

     **2.**      The Farm Allowed Secured Equipment Claim shall be consolidated into a single, consolidated, fully secured, first priority, non-recourse claim in the amount set as provided for herein, which the Debtors and Farm expect to be approximately $75,416.86, less the adequate protection payments made by the Debtors during this case on the equipment loan.

     **3.**      Subject to any mandatory prepayments required hereby, the Debtors shall pay the Allowed Secured Claim in this Class in full, with interest on the deferred payments provided for herein at a fixed rate equal to the WSJ Prime Rate  (for example, 3.25% as of March 1, 2022) in effect on the date that the Court confirms this Plan, plus 1%, as follows:

          **a.**      $40,000 from the Slate Settlement Proceeds, which shall be applied to the unpaid principal balance of the Allowed Secured Claim in this Class on the Effective Date of this Plan; and

          **b.**      An amount equal to the full amount of the Farm Patronage Credit available on the Effective Date, which is estimated by to be at least $16,000 by Farm.  The Farm Patronage Credit constitutes a credit only and may not be withdrawn in cash according to Farm. The Farm Patronage Credit may be applied only to principal and then interest on loans made to the Debtors.  As a result, the Debtors and Farm agreed to apply the Farm Patronage Credit in reduction of the principal balance of the Allowed Secured Claim in this Class.

          **c.**      The balance of the Allowed Secured Claim, which is projected to be approximately $19,000, in 84 consecutive monthly installments of principal and interest beginning on the 30th day from the Effective Date of this Plan and on the same date of each month thereafter until paid in full.  For feasibility purposes, the Debtors projected the monthly payment due on account of the Allowed Secured Claim in this Class to be $268.54.

     **4.**      If the Debtors sell or otherwise dispose of any of the Farm Equipment Collateral, the net proceeds thereof shall be paid over to Farm and applied as follows:  (a) first, in payment of any interest or other sums then due Farm and then (b) in payment of the principal portions of future installment payments to become due hereunder in the inverse order of their maturities.  Prepayments shall shorten the repayment term of the Allowed Secured Claim in this Class and the amount of interest that accrues thereon but shall not reduce the amount of installment payments becoming due thereafter. Prepayments shall change the allocation of future payments between principal and interest to reflect the prepayment.   .

Debtor Name: <u>Jacqueline Cash and Eric Reid</u>                                                     Case Number: <u>21-10475-BAH</u>

5.      At the option of the Debtors and in the Debtors' sole discretion at any time during the Plan Term, the Debtors may elect to refinance, sell or enter into a sale and lease-back transaction or arrange for the purchase of the Allowed Secured Claim in this Class or the Collateral securing the Allowed Claim in this Class in exchange for the payment of the unpaid principal balance of such claim on the date of the refinancing, sale or sale and lease-back and any accrued but unpaid interest and other charges.

6.      On the Effective Date, the Confirmation Order shall automatically amend the Farm Transaction Documents to conform to the provisions of this Plan and as follows:

a.      By reducing the default or penalty interest rate provisions to the non-default rate (i.e., prime rate as of the Confirmation date plus 1% as stated above) plus 2% per annum which is estimated to be 6.25% (assuming a prime rate of 3.25%);

b.      By deleting all after-acquired property and/or dragnet provisions;

c.      By deleting all cross-collateral provisions;

d.      By adding a paragraph that gives the Debtors (a) the right to cure any default in the payment of any dividend due hereunder within 15 days of the date of such default and (b) the right to cure any other default within 30 days of the date on which the creditor in this Class shall give the Debtors written notice of the default or such longer period of time as may be reasonably necessary to cure such default as long as the default does not unreasonably jeopardize the value of the Farm Equipment Collateral securing the Allowed Secured Claim in this Class and the Debtors are making a diligent effort to cure the default.

e.      By limiting and qualifying all of the Debtors' duties,  financial liabilities and other obligations under the Transaction Documents evidencing or securing the Allowed Secured Claim in this Class with the phrase  "as modified by the Plan of Reorganization confirmed by the United States Bankruptcy Court for the District of New Hampshire in *In re Eric Reid and Jacqueline Cash,* Case No. 21-10475-BAH (Bankr. D.N.H.  2021)" where necessary or appropriate.

7.      The entry of the Confirmation Order shall automatically (a) cure all breaches of, and defaults on account of the claims included in the Allowed Secured Claim in this Class that existed, may have existed or allegedly existed on the Petition Date or at any time during this case

and decelerate any demand for payment made by the creditor in  this Class, (b) change the payment and amortization terms of the Allowed Secured Claim in this Class to those set forth herein, (c) modify the Class Farm Equipment Transaction Documents to conform to the express provisions of this Section, (c) reduce the Allowed Secured Claim in this Class by the principal portion of any adequate protection payments made by the Debtors and (d) conform the Class Transaction Documents to this Plan.

8.        Except as modified by this Section, Farm shall retain (a) its lien or liens on the Farm Equipment Collateral held by such creditor as security for the payment of the Allowed Claim in this Class in accordance with the terms of this Plan and (b) all of the privileges, remedies and rights granted to creditor in this Class by the modified Class Transaction Documents with respect to the Allowed Claim in this Class.

**B.        Class 3 – Farm Secured Mortgage Claims Class.**

__x__ Impaired                                                __ __ Unimpaired

**Class Description.**  The only claim included in this Mandatory Payment Class is the Farm Secured Mortgage Claim, which includes the claim or claims asserted by Farm in the Farm Proof other than those included in the Farm Equipment Secured Claim.  The claims in this Class are secured by first priority liens on the Farm Mortgage Collateral . For the purposes of this Plan, the Debtors value the Farm Mortgage Collateral as follows: (a) Homestead Premises [102 Lockes Hill Road] at $600,000 on a reorganization value basis and $333,000-$444,000 on a liquidation basis in its current unfinished condition and (b) the Lot [Lockes Hill Rd R 13 1-2] at $60,000 on a reorganization value basis and $33,300-$44,400 on a liquidation basis.

**Treatment.**

1.        Subject to the further terms of this Section, the Farm Mortgage Secured Claim shall be Allowed on the Effective Date of this Plan in such amount as may be agreed to by this parties in the Confirmation Order or the amount set by the Bankruptcy Court if they cannot agree.  If the parties acting in good faith and dealing fairly with each other cannot agree, the dispute shall be subject to Judicial Mediation as provided for in this Plan.

2.        On the Effective Date, the creditor in this class shall be allowed a fully secured, first priority, non-recourse claim in this class (1) in the amount agreed by the parties to be

due on the Effective Date, which is expected to be approximately $403,064.29, plus certain advances in connection with the above equipment loan as well as the mortgage loan (interest/protective advances/attorney fees/other charges) allegedly made by FCE subject to review and approval by the Debtors which shall not be unreasonably withheld.  In the unlikely event that the parties cannot agree, the dispute shall be subject to judicial mediation as provided for in this Plan.  Notwithstanding the fact that the Farm Secured Mortgage Claim shall be a non-recourse claim, the Debtors shall remain liable for any loss resulting from waste of the Farm Mortgage Collateral committed by the Debtors or either of them, including failure to insure, allowing environmental damage, or by otherwise violating the following sections of the mortgages attached to the Farm Proof entered into by the parties: 7 (Use of Loan Proceeds and Collateral), 10 (Buildings), 12 (Environmental Requirements), and 13 (Insurance).  For avoidance of doubt, such exceptions to the non-recourse character of this debt shall not include default of the repayment obligations in the absence of waste as stated above or the doing or taking any act or action contemplated by this Plan, including without limitation, granting the Easement to Cheesman.

      **3.**      Subject to any prepayments required or permitted hereby, the Debtors shall pay the Allowed Secured Claim in this 3Class in full, with interest at a fixed rate equal to the WSJ Prime Rate (for example, 3.25% as of March 1, 2022) in effect on the date that the Court confirms this Plan, plus 2%, which is estimated to be 6% (assuming a prime rate of 3.25%), beginning on the 30th day from the Effective Date of this Plan and on the same date of each month thereafter as follows:

      **a.**      In 359 consecutive, equal monthly payments of principal and interest in such amount as would be necessary to pay the Allowed Secured Claim in this Class in full over a term of 30 years subject to the provisions of the Subparagraph b. hereof; and

      **b.**      Notwithstanding the 30-year amortization term set by Subparagraph a., a final balloon payment equal to the unpaid balance of the Allowed Claim in this Class shall be due on the stated maturity date of the promissory note evidencing such Claim, i.e., July 1, 2032.

      **4.**      For feasibility purposes the Debtors estimated the monthly payment to the creditor in this Class to be $2,416.57 based on the Farm Proof, which is *prima facie* evidence of the amount due the creditor in this Class but which will be recalculated to the appropriate amount pursuant to the provisions hereof.

5.      Once the fixed Mandatory Dividend Payments due Farm, Citizens and Brigham Trust hereunder have been paid in full and the Debtors have funded the Working Capital Reserve, the Debtor shall pay Farm an additional dividend from its remaining Available Disposable Income (if any) equal to 5% thereof calculated as of the preceding December 31 and the last day of the term of this Plan, as appropriate,, which shall be applied in reduction of the principal balance of the Allowed Secured Claim held by such creditor.  No payments shall be due any creditor holding an Allowed unsecured claim until the 5% Available Disposable Income payment due the creditor in this Class, has been paid in full as provided for hereunder.  For the avoidance of doubt, funds on deposit in the Working Capital Reserve, which are dealt with separately under this Plan, are not included in Available Disposable Income.

6.      In addition to any dividends required to be paid by Paragraph 5 of this Section, the Debtors shall pay to each creditor holding an Allowed Claim in this Class an amount equal to 5% of the funds on deposit in the Debtors' Working Capital Reserve, which shall be calculated as of the preceding December 31 and the last day of the term of this Plan, as appropriate.

7.      Payments becoming due under the preceding paragraphs 5 and 6 shall be made on or before the 30th day following the date as of which the Debtors must calculate their Available Disposable Income and Working Capital Reserve balance for this purpose.  All prepayments made by the Debtors pursuant hereto shall be applied to installment payments becoming due hereunder in the inverse order of their maturities.  Such prepayments shall not reduce the amount of any installment payment becoming due hereunder.  Prepayments shall reduce the principal balance of the Allowed Claim of the Allowed Claim in this Class and the interest that accrues thereon although the reduction is not shown in Exhibit D because the prepayments are uncertain in amount.

8.      If the Debtors propose to sell or otherwise dispose of any Collateral for the Allowed Claim in this Class, whether subdivided or not, which shall be subject to Farm approval (which approval shall not be unreasonably withheld), the net proceeds thereof shall be paid over to Farm subject to the Debtors' option and right to request Farm to permit them to pay up to 10% thereof to junior secured creditors holding a preserved a lien on the Collateral.  If the Debtors shall request permission to pay over 10% or less of the net proceeds of a sale of all or part of the Collateral securing the payment of the Allowed Claim in this Class, Farm shall approve the request

made by the Debtors unless it shall reasonably determine that that the release will affect adversely and materially the loan to value ratio following the reduction of the amount of the Allowed Claim in this Class resulting from the sale or other disposition. Farm shall not unreasonably delay or withhold approval of any request made by the Debtor pursuant to this sub-paragraph.

9.      The Debtors may subdivide the Farm Mortgage Collateral into one or more lots from time to time. If the Debtors subdivide the Farm Real Estate Collateral (subject to approval by Farm which shall not be unreasonably withheld), the Farm Mortgage Loan Documents shall be amended by adding a provision that entitles the Debtors to partial discharges or releases in the event of an arms-length sale of a portion of the Farm Mortgage Collateral for an amount equal to the net proceeds of such a sale that would otherwise be payable to the Debtors, as seller, reasonably determined in accordance with customary and usual New Hampshire real estate customs and practices.

10.      For the avoidance of doubt, the granting of the Easement to Cheesman required by this Plan is not a sale or disposition or subdivision of the Farm Mortgage Collateral within the meaning of this Plan or the Farm Mortgage Transaction Documents or a default thereunder.

11.      The entry of the Confirmation Order shall automatically modify the Class Transaction Documents to conform to the provisions of this Section and the other provisions of this Plan to the extent reasonably necessary to implement this Plan in accordance with its terms and as follows:

a.      Article V, Section A, , Paragraphs 6.b-e,  and 7 hereof are incorporated into this Section by reference and made applicable to the Class Transaction Documents.

12.      Notwithstanding the incorporation of Article V, Section A, , Paragraphs 6.b-e,  and 7 hereof, (1) the Farm Mortgage Collateral shall continue to secure the payment of the Allowed Farm Secured Equipment Claim until they are paid in full and (2) the default interest rate shall be 2.75% over the non-default interest rate, which is estimated to be 8% (assuming a prime rate of 3.25%).

Debtor Name:  Jacqueline Cash and Eric Reid                                    Case Number: 21-10475-BAH

13.     Except as modified by this Section, Farm shall retain (a) its lien or liens on the Farm Mortgage Collateral held by such creditor as security for the payment of the Allowed Claim in this Class in accordance with the terms of this Plan and (b) all of the privileges, remedies and rights granted to creditor in this Class by the modified Class Transaction Documents with respect to the Allowed Claim in this Class.

14.     Notwithstanding any other provision of the Plan or any related documents, the Debtors release, waive and relinquish any and all Causes of Action against Farm including without limitation, chapter 5 claims.

15.     For avoidance of doubt, the FCE claim in this class is not subject or subordinate to the Debtors' homestead rights pursuant to the Order on Objection to Exemption Claimed by the Debtors filed by FCE [Doc. 76].

C.     **Class 4 – Citizens Secured Mortgage Claims Class.**

__x__ Impaired                                                           __ __Unimpaired

**Class Description.**  This Mandatory Payment Class includes Citizens and the Citizens Claim in the amount of $219,724.69 asserted in the Citizens Proof to the extent secured by valid, enforceable and perfected liens on such Collateral and qualifying as secured claims under Code Section.  The claim in this Class is secured by a first priority liens on the Citizens Mortgage Collateral, which is the Rental Premises. For the purposes of this Plan, the Debtors value the Farm Equipment Collateral at (a) $300,000 on a reorganization value basis and between $180,000-$240,000 on a liquidation value basis.

**Treatment.**

1.     Subject to the further terms of this Section, the Citizens Claim shall be Allowed on the Effective Date of this Plan in such amount as may be agreed to by this parties or the amount set by the Bankruptcy Court if they cannot agree.  If the parties acting in good faith and dealing fairly with each other cannot agree, the dispute shall be subject to Judicial Mediation as provided for in this Plan.

2.     The Debtor estimates that the Allowed Citizens Mortgage Claim will be $219,724.69.  Under no circumstances shall the Allowed Citizens Mortgage Claim be greater in

amount than the reorganization value of the Citizens Mortgage Collateral as agreed to by the Debtors and the creditor in this Class or determined by the Court.

3.      The Allowed Citizens Mortgage Claim shall be paid in full, with interest at the fixed rate of 4.25% in 240 consecutive, equal monthly installments of principal and interest, beginning on the 30th day following the Effective Date and on the same date of each succeeding month thereafter until paid in full.  For feasibility purposes, the Debtors estimated the maximum monthly payment to the creditor in this Class to be $1,360.61 based on the Class Proof, which is *prima facie* evidence of the amount due the creditor in this Class, without projecting the effect of any prepayments.

4.      Once the fixed Mandatory Dividend Payments due Farm, Citizens and Brigham Trust hereunder have been paid in full and the Debtors have funded the Working Capital Reserve, the Debtor shall pay Citizens an additional dividend from its remaining Available Disposable Income (if any) equal to 5% thereof calculated as of the preceding December 31 and the last day of the term of this Plan, as appropriate, which shall be applied in reduction of the principal balance of the Allowed Secured Claim held by such creditor.  No payments shall be due any creditor holding an Allowed unsecured claim until the 5% Available Disposable Income payment due the creditor in this Class, has been paid in full as provided for hereunder.  For the avoidance of doubt, funds on deposit in the Working Capital Reserve, which are dealt with separately under this Plan, are not included in Available Disposable Income.

5.      In addition to any dividends required to be paid by Paragraph 6 of this Section, the Debtors shall pay to Citizens an amount equal to 5% of the funds on deposit in the Debtors' Working Capital Reserve, which shall be  calculated as of the preceding December 31 and the last day of the term of this Plan, as appropriate.

6.      Payments becoming due under the preceding paragraphs 4 and 5 shall be made on or before the 30th day following the date as of which the Debtors must calculate their Available Disposable Income and Working Capital Reserve balance for this purpose.  All prepayments made by the Debtors pursuant hereto shall be applied to installment payments becoming due hereunder in the inverse order of their maturities.  Such prepayments shall not reduce the amount of any installment payment becoming due hereunder.  Prepayments shall reduce the

principal balance of the Allowed Claim of the Allowed Claim in this Class and the interest that accrues thereon.

7.      No prepayment shall shorten the amortization period.  To preserve the benefit of this Plan for unsecured creditors holding Allowed Claims by increasing cash flow, all prepayments shall reduce the amount of each regular monthly payment becoming due thereafter by re-amortizing the reduced principal balance over the amortization term although the reduction is not shown in Exhibit D because the prepayments are uncertain in amount.

8.      The entry of the Confirmation Order shall automatically modify the Citizens Transaction Documents to conform to the provisions of this Section and the other provisions of this Plan to the extent reasonably necessary to implement this Plan in accordance with its terms and as follows:

a.      Article V, Section A, , Paragraphs 6.b-e,  and 7 hereof are incorporated into this Section by reference and made applicable to the Class Transaction Documents as fully as if set forth at length.

9.      Subject to the modifications to the Citizens Transaction Documents made by and pursuant to this Plan, Citizens shall retain (ai) its lien on the Citizens Mortgage Collateral as security for the payment of the Citizens Allowed Mortgage Secured Claim subject to liens for unpaid real estate taxes and (b) all of its other privileges, remedies and rights under the Brigham Transaction Documents.

10.     Except as modified by this Section, Citizens shall retain (a) its lien on the Citizens Mortgage Collateral as security for the payment of the Allowed Citizens Secured Mortgage Claim in accordance with the terms of this Plan and (b) all of the privileges, remedies and rights granted to creditor in this Class by the Citizens Transaction Documents, as modified by this Plan, with respect to such Allowed Secured Claim.

D.      **Class 5 – Brigham Trust Secured Mortgage Claim Class.**

__x__  Impaired                              __ __ Unimpaired

**Class Description.**  This Mandatory Payment Class includes all of the claims made, held or asserted against the Debtors or either of them by the Brigham Trust or Brigham, including without limitation, the disputed claim in the amount of $249,188.50 asserted by the Brigham Trust

in the Brigham Trust Proof.  Except for the portion of the Brigham Claim to be Allowed the Brigham Trust pursuant to this Section, neither Brigham Trust nor Brigham shall other claims or Causes of Action against the Debtors.

**Treatment.**

1.     Subject to the further terms of this Section, Brigham Trust shall be Allowed on the Effective Date a non-recourse, junior secured claim in the amount of $225,000 by way of compromise and settlement.

2.     The Allowed Brigham Trust Secured Mortgage Claim shall be paid in full, with interest at the rate of 5%, in consecutive, equal monthly installments of principal and interest over a term of 120 months, beginning on the 30th day from the Effective Date and on the same date of each month thereafter in accordance with the following schedule:

a.     The first 119 installments of principal and interest shall be in such amount as would be necessary to amortize and pay in full the Allowed Brigham Trust Secured Claim over a period of 20 years, which is estimated to be $1,484.90; and then

b.     A 120th or final balloon payment equal to the unpaid balance due on account of such claim on that date.

c.     For each $1.00 in principal prepaid by the Debtor on account of the Allowed Brigham Trust Secured Claim, including payments made from the Working Capital Reserve and Available Disposable Income, the Debtor shall receive a credit against the principal balance thereof equal to (a) $1.15 during the first 12 months from the Effective Date and (b) $1.10 during each of the next 4 Plan Years.  All prepayments of principal shall be applied in reduction of the unpaid principal balance of the Allowed Claim and each installment payment becoming due thereafter to preserve the amortization term for the benefit of other creditors.  If and to the extent that the Debtor elects to make the scheduled payments of principal and interest, the difference between the amount thereof and the re-amortized amount that would otherwise be due after a prepayment shall be treated as an additional prepayment of principal.

3.     Once the fixed Mandatory Dividend Payments due Farm, Citizens and Brigham Trust hereunder have been paid in full and the Debtors have funded the Working Capital Reserve, the Debtor shall pay Brigham Trust an additional dividend from its remaining Available

Disposable Income (if any) equal to 5% thereof calculated as of the preceding December 31 and the last day of the term of this Plan, as appropriate, which shall be applied in reduction of the principal balance of the Allowed Secured Claim held by such creditor.  No payments shall be due any creditor holding an Allowed unsecured claim until the 5% Available Disposable Income payment due the creditor in this Class, has been paid in full as provided for hereunder.  For the avoidance of doubt, funds on deposit in the Working Capital Reserve, which are dealt with separately under this Plan, are not included in Available Disposable Income.

      **4.**      In addition to any dividends required to be paid by Paragraph 6 of this Section, the Debtors shall pay to the Allowed Secured Creditor in this Class an amount equal to 5% of the funds on deposit in the Debtors' Working Capital Reserve, which shall be  calculated as of the preceding December 31 and the last day of the term of this Plan, as appropriate.

      **5.**      Payments becoming due under the preceding paragraphs 4 and 5 shall be made on or before the 30th day following the date as of which the Debtors must calculate their Available Disposable Income and Working Capital Reserve balance for this purpose.  All prepayments made by the Debtors pursuant hereto shall be applied to installment payments becoming due hereunder in the inverse order of their maturities.  Such prepayments shall not reduce the amount of any installment payment becoming due hereunder.  Prepayments shall reduce the principal balance of the Allowed Claim of the Allowed Claim in this Class and the interest that accrues thereon.

      **6.**      No prepayment shall shorten the amortization period.  To preserve the benefit of this Plan for unsecured creditors holding Allowed Claims by increasing cash flow, all prepayments shall reduce the amount of each regular monthly payment becoming due thereafter by re-amortizing the reduced principal balance over the amortization term although the reduction is not shown in Exhibit D because the prepayments are uncertain in amount.

      **7.**      The entry of the Confirmation Order shall automatically modify the Brigham Transaction Documents to conform to the provisions of this Paragraph and the other provisions of this Plan to the extent reasonably necessary to implement this Plan in accordance with its terms.  Without limiting the generality of the preceding sentence, the Brigham Transaction Documents shall be modified as follows:

**a.** The Brigham Transaction Documents shall authorize and permit or be deemed to authorize and permit the Debtors to enter into and close the transactions with Mr. Cheesman contemplated by this Plan, including the conveyance of the Cheesman Easement over the Homestead Premises.

**b.** If the Debtors refinance any of the Real Properties encumbered by a Brigham Mortgage in a bona fida arms-length transaction for an amount equal to at least 80% of the fair market value of the refinanced Real Property at the time of the transaction, the Brigham Trust shall execute and deliver a partial discharge of its Mortgage of the Real Property in exchange for the prepayment of an amount equal to the lesser of the Allowed Secured Claim in this Class or the net proceeds of the refinancing remaining after the payment of all senior liens on and/or interests in such Real Property.

**c.** The provisions of Article V, Section A, , Paragraphs 6.b-e,  and 7 hereof are incorporated into this Section by reference and made applicable to the Class Transaction Documents. as fully as if set forth at length in this section.

**d.** If, and to the extent that the Debtors shall not make any payment or payments due a creditor holding a senior lien on the Brigham Mortgage Collateral, no payment shall be due the creditor in this Class until all payments then due a senior lienholder have been paid in full.

**e.** Subject to the modifications to the mortgages of record held by Brigham made by and pursuant to this Plan and/or other pleading filed in this case, the Brigham Trust shall retain (**1**) its junior liens on the Real Properties as security for the payment of the Allowed Brigham Secured Claim subject to liens for unpaid real estate taxes, the senior liens held by Farm, the Debtors' homestead interest in the case of the Homestead Premises and any other liens or rights, title and interests that are senior to the Brigham Liens under applicable state law and/or the Code and (**2**) all of its other privileges, remedies and rights under the Brigham Transaction Documents.

**E.** The Debtors and the Brigham Trust and Peter Brigham shall exchange mutual general releases that discharge, release and relinquish all Causes of Action, which either party has or may have against the other party and their affiliates and related entities and each of their heirs, executors, administrators, successors, legal representatives and assigns and each of their

accountants, attorneys and other agents, except for Causes of Action arising from, out of or incidental to a breach of or default under this Plan or a modified Brigham Transaction Document.

     **F.**     **Class 6 - Cheesman Secured Claim Class.**

          \_\_x\_\_  Impaired                       \_\_ \_\_  Unimpaired

     **Description.**  This Mandatory Payment Class includes the disputed secured claim in the amount of $146,377.25 asserted by Cheesman in Proof of Claim 20 to the extent Allowed by this section.

     **Treatment.**

     **1.**     After considerable discussion with Cheesman and investigation, including privileged discussions with Debtors' pre-bankruptcy counsel, Tarbell & Brodich, the Debtors concluded in the exercise of their business judgment that, pursuant to the Agreement attached to the Cheesman Proof, Cheesman holds equitable rights to the conveyance of an appurtenant easement over the Homestead Premises approximately 12' in width and the conveyance of the Lot that are junior, inferior and subordinate to the liens held by Farm, Citizens and the Brigham Trust that could be treated as a non-priority unsecured claim along with the unsecured claim asserted by Cheesman in Proof of Claim 19.

     **2.**     The Debtors and Cheesman have agreed to comprehensively compromise and settle all of the claims included in this Class and the Cheesman Unsecured Claim Class (Class 9), including the Equitable Rights and/or claims for monetary damages asserted in such Class as follows:

          **a.**     Subject to the drafting of mutually acceptable documents that conform to the provisions hereof, any subdivision approval determined to be necessary by the Town of Epsom and the consent of Farm and the Brigham Trust expressed by their approval of this Plan but subject to their liens preserved by this Plan, the Debtors shall convey to Cheesman the Cheesman Easement appurtenant over the historic logging path on the Homestead Premises depicted generally on drawings and mark-ups reviewed by the parties, which is no more than 12' in width in any case, that may be used for the benefit of his adjacent premises and access to such premises.  Cheesman shall in turn provide an easement over his adjacent premises over the historic

logging path to Debtors' Homestead Premises, subject to the continued existence of the easement over the Homestead Premises described in the foregoing sentence, such that both parties recognize the historic path that exists on the ground and maintain access to their parcels using that path as it has been used historically provided that both easements remain in full force and effect.

   **b.**  On the Effective Date, $100,000 of the claim held by Mr.  Cheesman and asserted as Claim 20 in the amount of $146,377.25 shall be deemed discharged, extinguished and uncollectible as of the Effective Date, with only $46,377.25 of Claim 20 remaining due.

   **c.**  Also on the Effective Date, all $60,000 of the claim held by Mr. Cheesman and asserted as Claim 19 in the amount of $60,000 shall be deemed Allowed and provided for as set forth herein.

   **d.**  Also on the Effective Date, Debtors shall be deemed to have waived their discharge with respect to the compromised, Allowed compromised claims in the total amount of $106,377.25 to be paid and treated as provided for in this Plan and agreed to the non-dischargeability thereof.

   **e.**  Accordingly, on the Effective Date Mr.  Cheesman's combined $206,377.25 in claims asserted as Claim 19 and Claim 20 shall be reduced by $100,000 to a total of $106,377.25 leaving Mr.  Cheesman with a combined non-dischargeable claim against Debtors in the amount of $106,377.25.

   **f.**  The Debtors shall execute and deliver to Mr.  Cheesman on the Effective Date the Cheesman Plan Note, which shall be a full recourse non-dischargeable promissory note for the payment of the principal sum of $106,377.25, with no interest, as follows:

     **(1)**  No payments for 3 years from the date of the Note; and then

     **(2)**  In monthly payments in such amount as would be necessary to amortize the unpaid principal balance over eight years following the initial three year period of no payments.

   **g.**  As security for the payment and performance of the Cheesman Plan Note, the Debtors shall execute and deliver to Mr.  Cheesman the Cheesman Plan Mortgage, which shall be a statutory power of sale mortgage of the Lot that is junior and inferior to all liens senior to such mortgage which are preserved by this Plan, including without limitation, the mortgages held

Debtor Name: Jacqueline Cash and Eric Reid                    Case Number: 21-10475-BAH

by Farm and the Brigham Trust, if any.  Should the Lot be sold to a bona fide third party purchaser or refinanced for value and the proceeds thereof are insufficient to pay the Cheesman Plan Note in full or in part, Cheesman shall release his lien on the Lot and Debtors agree that the non-dischargeable full recourse nature of the Cheesman Plan Note shall not be impacted thereby and Cheesman shall still have the full right to collect on the Cheesman Plan Note.

> **h.**      Cheesman shall pay all of the costs and expenses incurred and to be incurred in connection with the preparation of the Cheesman Easement, which shall be completed by Tarbell & Brodich, and the Cheesman Plan Note and the Cheesman Plan Mortgage which shall be prepared by counsel to Cheesman subject to the reasonable approval of the Debtors and Debtors' Counsel.

> **3.**      Except as provided herein, the entry of the Confirmation Order shall automatically discharge and release the Debtors of and from any and all other Causes of Action that Cheesman ever held, now holds or might hold against the Debtors for, upon or by reason of any matter, cause or thing, except for those arising under the Cheesman Easement or Chessman Plan Note or Mortgage, including the $100,000 set forth above in Part 4(b).  Cheesman and the Debtors will enter into a Plan Support Agreement that obligates Cheesman to vote in favor of and support unconditionally the Confirmation of any plan of reorganization proposed by the Debtors that provides him with substantially the same treatment provided for in this Plan.

> **4.**      Except as provided for herein, Cheesman shall have no other claims against the Debtors.

> **G.**      **Class 7A – Minor Secured Claims with Modified Maturity Dates Class.**

> __x__ Impaired                                   __ __ Unimpaired

> **Class Description.**  This Mandatory Payment Class includes the secured claims asserted by Bank of America, Proof of Claims 4-1 and 5-1 in the respective amounts of $3,025.02 and $14,647.59, and South Shore Bank/Bankers Healthcare Group, Proof of Claim 15 in the amount of $109,219.39 if and to the extent secured by valid and enforceable, perfected liens on property of the estate and qualifying as secured claims within the meaning of Code Section 506.  The claims in this Class are secured by first priority liens on the (1) Bank of America Collateral, which is valued

at $7,000 and $25,000 on a reorganization value basis and (2) South Shore/Bankers Collateral, which is valued at $55,070.63 on a reorganization value basis.

**Treatment:**

1. The creditors in this Class hold valid and enforceable, first priority liens on the following Collateral:

      **a.** Bank of America Collateral; and

      **b.** South Shore Bank/Bankers Collateral;

2. On the Effective Date, each creditor in this Class shall be Allowed a secured claim in (**a**) the amount agreed to by the parties or (b) the amount determined to be due on account of the claim in this Class by the Court. The Debtor and a creditor in this Class shall be deemed to have agreed to an Allowed Claim in the amount set forth in Exhibit A, Estimated Allowed Claims, less the amount of adequate protection payments made to the creditor during this case, in the absence of an objection to the Confirmation of this Plan by a Class creditor. Under no circumstances shall an Allowed Minor Secured Claim with Modified Maturity Dates exceed the value of the value of the creditor's interest in the value of the Debtors' interest in the Minor Secured Creditor Collateral.

3. Each Allowed Secured Claim in this Class shall be paid in full, with interest at the fixed rate of 4.25% in 36 consecutive, equal monthly installments of principal and interest, beginning on the 30th day from the Effective Date and on the same date of each succeeding month thereafter until paid in full. For feasibility purposes, the Debtors estimated the maximum, total monthly payments to the creditors holding Allowed Minor Secured Claims in this Class to be a total of $2,022.45 based on Exhibit A and an assumed 36 month repayment term.

4. Under no circumstances shall a Minor Secured Claim be Allowed in an amount greater in amount than the reorganization value of the Collateral held by a Class creditor as agreed to by the Debtors and the creditor in this Class or determined by the Court . If the Allowed amount of any claim in this Class shall be less than the balance of the claim held by the creditor in this Class, the deficiency shall be treated as a General Unsecured Claim.

5. The entry of the Confirmation Order shall automatically modify the Class Transaction Documents to conform to the provisions of this Section and the other provisions of this

Plan to the extent reasonably necessary to implement this Plan in accordance with its terms and as follows:

            **a.**        The maturity date of each Allowed Secured Claim in this Class shall be modified so that it is the last day of the 36th month from the Effective Date of this Plan.

            **b.**        The Debtor may sell or otherwise dispose of Collateral for Allowed Claims in this Class without the prior permission of a creditor holding an Allowed Secured Claim in this Class as long as the net proceeds thereof is sufficient to satisfy the secured claim.  The net proceeds of any such sale or disposition shall be paid over to the secured creditors to the extent necessary to satisfy the Allowed Secured Claim.

            **c.**        The Debtor may sell or otherwise dispose of Collateral for Allowed Claims in this Class with the prior consent of a creditor holding an Allowed Secured Claim in this Class if the proceeds thereof will not be sufficient to satisfy the secured claim in this Class.  The net proceeds of any such sale or disposition shall be paid over to the secured creditors to the extent necessary to satisfy the Allowed Secured Claim and applied in reduction of the Allowed Secured Claim.  The secured creditor shall execute and deliver such termination statements, lien releases and other documents as may be reasonably necessary to close the sale or disposition of the Collateral.

            **d.**        At such time as an Allowed secured creditor in this Class shall have no further Collateral, such Allowed secured creditor shall have no further claim in this Class.

            **e.**        Article V, Section A, , Paragraphs 6.b-e,  and 7 hereof are incorporated into this Section by reference and made applicable to the Class Transaction Documents.

            **6.**        Except as modified by this Section, each creditor in this Class shall retain (a) its lien or liens on the Class Collateral held by such creditor as security for the payment of the Allowed Claim in this Class in accordance with the terms of this Plan and (b) all of the privileges, remedies and rights granted to creditor in this Class by the modified Class Transaction Documents with respect to the Allowed Claim in this Class.

        **H.**        **Class 7B – Minor Secured Claims without Modified Maturity Dates Class.**

    __x__ Impaired                                    __ __ Unimpaired

**Description.**  This Mandatory Payment Class includes the secured claims asserted by Harley in the Harley Proof in the amount of $34,074.73  and USAA Federal Savings Bank, Proof of Claim 8 in the amount of $31,919.81 if and to the extent secured by valid and enforceable, perfected liens on property of the estate and qualifying as secured claims within the meaning of Code Section 506.

**Treatment:**

**1.**      Subject to the further terms of this Section, each Minor Secured Claim in this Class shall be Allowed on the Effective Date a secured claim in (a) the amount agreed to by the parties or (b) the amount determined to be due on account of the claim in this Class by the Court. In the absence of an objection to the Confirmation of this Plan by a creditor in this Class, the Debtor and each creditor in this Class shall be deemed to have agreed to an Allowed Secured Claim in the amount set forth in Exhibit A, Estimated Allowed Claims, less the amount of adequate protection payments made to the creditor during this case.  Under no circumstances shall an Allowed Minor Secured in this Class exceed the value of the value of the creditor's interest in the value of the Debtors' interest in the Collateral held by such creditor.

**2.**      Each Allowed Claim in this Class shall be paid in full, with interest at the fixed rate of 4.25% as provided for herein.

**3.**      The Allowed Harley Minor Secured Claim in this Class will be paid in full in consecutive monthly installments of principal and interest as follows, beginning on the Effective Date and on the same date of each month thereafter in the remaining term thereof as follows:

**a.**      Except for the last or final installment payment, each monthly payment shall be in such amount as would be necessary to amortize a loan in the amount of the Allowed Claim in 60, consecutive, equal monthly installments of principal and interest in the estimated amount of $631.39 each.

**b.**      The last or final payment, which shall be equal to the unpaid balance of the Allowed Claim, including without limitation, principal and accrued interest if any, shall be due on the maturity date of the Allowed Claim under the Harley Transaction Documents.

**4.**      The Allowed USAA Federal Minor Secured Claim in this Class will be paid over the number of months remaining in the stated term of the Transaction Documents, exclusive

of any acceleration of such dates, beginning on the 30th day from the Effective Date and on the same date of each succeeding month thereafter until paid in full.

        5.       For feasibility purposes, the Debtors estimated the total payments to Minor Secured Creditors in this Class to be $1,029.28 per month based on Exhibit A and an assumed 36 month repayment term.

        6.       Under no circumstances shall an Allowed Minor Secured Claim in this Class be greater in amount than the reorganization value of the Collateral held by the creditor as agreed to by the Debtors and the creditor in this Class or determined by the Court.  If the Allowed amount of any claim in this Class shall be less than the balance of the claim held by the creditor in this Class, the deficiency shall be treated as a General Unsecured Claim.

        7.       The entry of the Confirmation Order shall automatically modify the Harley and USAA Transaction Documents to conform to the provisions of this Section and the other provisions of this Plan to the extent reasonably necessary to implement this Plan in accordance with its terms and as provided for in Section G, Minor Unsecured Claim with Modified Maturity Dates, except for subparagraph 5.a.  thereof.

        8.       Except as modified by this Section, each Minor Secured Creditor in this Class shall retain (a) its lien or liens on the Collateral held by such creditor as security for the payment of the Allowed Claim in this Class in accordance with the terms of this Plan and (b) all of the privileges, remedies and rights granted to creditor in this Class by the Bank of America and USAA Transaction Documents as modified hereby, with respect to the Allowed Minor Secured Claims in this Class.

     I.      **Class 8 - General Unsecured Claims Class**.

      \_\_x\_\_  Impaired                      \_\_ \_\_ Unimpaired

      Description.  This Class includes all General Unsecured Creditors and Claims, including without limitation, those identified in Exhibit A, General Unsecured Creditors and Claims.

      **Treatment:**

        1.       The Debtors shall calculate and determine the amount of their Available Disposable Income for this Class and the balance of the Working Capital Reserve as of December

31st of each year during the Plan Term and the last day of the Plan Term in the case of the last Plan Year.

       **2.** On the 30th day following the date on which the Debtors determine the Available Disposable Income for this Class and the balance of the Working Capital Reserve, the Debtors shall pay to each Allowed General Unsecured Creditor:

       **a.** A fractional portion of the amount of their Available Disposable Income for this Class, the numerator of which shall be the amount of an Allowed General Unsecured Claim and the denominator of which shall total amount of Allowed Claims in this Class; and

       **b.** The same fractional portion of 5% of the balance of the Working Capital Reserve

       **3.** In Exhibit D, the Debtors project that creditors holding Allowed Claims in this Class will be paid $19,677.54 over the Plan Term.

       **4.** In the event that any claim in this Class shall not have been Allowed when the first dividend payment becomes due creditors in this Class, the Debtors may deposit the amount that might be payable on account of each such claim in a non-interest bearing, dividend escrow account for payment to the creditor with the first payment becoming due following the allowance of the claim in lieu of delaying the payment of dividends to other creditors. If any money remains in the dividend escrow account on the 30th day following the completion of the claims allowance process established by this Plan, the Debtors shall pay each creditor holding an Allowed Claim in this Class their fractional share thereof. These potential payments are not shown in the Financial Projections because they are speculative.

    **J.** **Class 9 – Cheesman Unsecured Claim Class.**

                          __x__ Impaired

                           ____ Unimpaired

    **Treatment:**

       **1.** This Class includes the claim in the amount of $60,000.00 asserted by Cheesman in Proof of Claim No. 19, and any and all other claims, which Cheesman holds or may hold against the Debtors.

2.      The Cheesman Unsecured Claim shall be Allowed, paid and treated as and to the extent provided for in Class 6, Cheesman Secured Claim Class.  The Debtors have agreed to waive their discharge with respect to Claim 19, as but only as and to the extent limited, modified and expressly provided for in Class 6, Cheesman Secured Claim Class and this Plan shall render Claim 19 non-dischargeable as set forth above in Class 6 in full and complete satisfaction of the non-dischargeability claim asserted informally by Cheesman and vigorously disputed by the Debtors informally and to conserve the property of the estate and maximize dividends to General Unsecured Creditors by avoiding litigation cost and expense.

3.      Except as provided for in Class 6 Cheesman Secured Claim Class, no dividends shall be due or payable on account of the Cheesman Unsecured Claim in this Class during the term of this Plan, except as provided for herein.

## . ARTICLE VI: ALLOWANCE AND DISALLOWANCE OF CLAIMS

**A.      Disputed Claim.  A disputed claim is a claim that has not been Allowed by a final** non- appealable order, and as to which either: (1) a proof of claim has been timely filed or deemed filed, and the Debtors or another party in interest has or could file an objection or (2) no proof of claim has been filed, and the Debtors have scheduled or listed such claim as disputed, contingent, or unliquidated in the Schedules or Exhibit A.

**B.      Delayed Distribution On Disputed Claims.**  No distribution will be made on account of a disputed claim unless such claim is Allowed in whole or in part by a final non-appealable order.

**C.      Settlement of Disputed Claims.**  The Debtors will have the power and authority to settle and compromise a claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VII: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF REAL ESTATE

**A.      Assumed Executory Contracts and Unexpired Leases.**  Except for the Cheesman Agreement, the Debtors are not parties to any executory contracts or the tenant under any unexpired leases of real estate to the best of their knowledge and belief.

**B.**     **Cheesman Agreement**.  The Cheesman Agreement shall be rejected as of the petition date.  The Cheesman Secured and Unsecured Claims arising out of the Cheesman Agreement shall be compromised, settled and resolved as provided for in this Plan.

**C.**     **Rejection of All Other Leases and Executory Contracts.**

**1.**     Except for executory contracts and unexpired leases assumed pursuant hereto, and if applicable assigned, before the Effective Date, or that are the subject of a pending motion to assume, and if applicable assigned, the Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

**2.**     A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than the later of (1) the 30th day after the date of the order confirming this Plan or the 30th or (2) the 30th day following the date of the entry of an order resolving all of the issues in the.

**D.**     **Reservation of Right to Change Election to Assume or Reject.**  At any time before the Effective Date, the Debtors may decide to assume or reject any executory contract or unexpired real estate lease by giving the counterparty thereto notice of the Debtors' election to do so at which time it shall become an assumed or rejected executory contract or unexpired real estate lease, as appropriate.  Thereafter, the counterparty shall have 30 days to object to the assumption of the executory contract or unexpired real estate lease or file a rejection claim, as appropriate.

**ARTICLE VIII: CONDITIONS PRECEDENT AND PRIMARY MEANS FOR IMPLEMENTATION OF THIS PLAN**

**A.**     **Conditions Precedent to Debtor's Duty to Implement Plan.**

**1.**     The entry of an order confirming this Plan that is reasonably acceptable in form and substance to the Debtors.

**B.**     **Notice of Substantial Consummation, Termination of Trustee Service.**

**1.**     The service of the Trustee in the case shall terminate when the plan has been substantially consummated by the Debtors.

**2.**     Not later than fourteen (14) days after this Plan shall be substantially consummated, the Debtors shall file with the Court and serve on the Trustee, the UST and all parties in interest a notice of the substantial consummation of this Plan.

C.        **Valuation of Collateral.**  If any secured creditor objects to this Plan based on the reorganization and/or liquidation values proposed by the Debtors on or before the 30th day from the date it is filed with the Court, the Debtors or the objecting creditor may request the Bankruptcy Court to determine the liquidation and reorganization value of the Collateral held by each secured creditor of record.  In no event shall a secured claims be Allowed in an amount exceeding the reorganization value of the Collateral securing the claim.

D.        **Working Capital Reserve and Additional Distributions.**  The Debtors shall retain as a plan implementation reserve the sum of $2,500 per month beginning in Month 1.  The Working Capital Reserve may be used to pay costs and expenses incurred by the Debtors in the ordinary course of their businesses (other than those incurred by Dr. Cash in connection with the practice of dentistry).  On December 31 of each Year during the term of this Plan, the Debtors shall or make the additional prepayments to Farm and Citizens from the Working Capital Reserve and may make an additional payment to the  therefrom to the extent permitted by this Plan.  All payments made to a secured creditor on account of an Allowed Secured Claim pursuant to this Section shall be prepayments of principal and applied to the unpaid principal balance thereof and in reduction thereof.  and treated as provided for in the Article that sets the repayment terms of Allowed Claims in those Classes.  Although the payments made from the Working Capital Reserve may be described as mandatory, they are only due and payable to the extent that the Working Capital Reserve has a positive balance as of a December 31 during a Plan Year or the last day of the Plan Term, as appropriate.

E.        **Court Approval Required for Certain Payments.**  Any payment made or to be made by the proponent, by the Debtors, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, shall be approved by, or is subject to the approval of, the court as reasonable, including without limitation, Administrative Expense Claims held or asserted by professionals retained pursuant to Code Section 327.

F.        **Post-Confirmation Management by Individual Debtors.**  The Debtors shall continue to own and manage the property of the estate subject to the terms of this Plan and the privileges, remedies and rights of creditors hereunder.

**G.     Insiders to be Employed Post-Confirmation.**  Mr. Reid will provide services to the businesses of the Debtors but will not be compensated therefor.

**H.     No Necessary Regulatory Rate Approval.**  No regulatory agency has jurisdiction over or the right to approve the contract prices or fees charged by the Debtors.

**I.     No Retiree Benefits.**  The Debtors do not provide any retiree benefits to any past or present employees.

**J.     Dividends and Transfers of Property Pursuant to Plan.**  Notwithstanding any other provision of this Plan, all dividends and transfers of property to be made by the Debtors under the plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

**K.     Certain Pending Actions to be Dismissed with Prejudice.**  Each dismissal shall be "with prejudice; no interest, no costs; each party to bear such party's attorneys' fees, costs and expenses; no further action for the same or any similar cause." On written request made by the Debtors, each other party to an Action dismissed pursuant to this Section shall execute and deliver to the Debtors a confirmatory notice of dismissal or agreement for docket markings that terminates the Action as provided for herein.

**L.     Retained Actions.**  Subject to the terms of this Article, the Debtors shall retain the following demands, causes of action, equitable and statutory rights and other claims and remedies therefor of any and every nature whatsoever, actions, civil actions, equity proceedings, suits and other administrative, alternative dispute resolution proceedings:

**1.**     The underinsured motorist claim against the Debtor's insurer USAA arising from the Reid Personal Injury Claim if a settlement thereof has not been approved by the Court.

**2.**     All Causes of Action, which the Debtors hold or may hold against any person or entity arising under Chapter 5 of the Code or the New Hampshire Uniform Fraudulent Transfer Act.

**3.**     All objections to claims which have been filed or may be filed against any person or entity pursuant to this Plan or the order confirming this Plan notwithstanding the Confirmation of this Plan.

4.     Any adversary proceedings and contested matters pending on the date that that the order confirming this Plan shall be entered by the Court other than those described more specifically in this Section.

5.     Any and all other adversary proceedings, applications, contested matters and other administrative, alternative dispute resolution and judicial proceedings, which fall within the post-Confirmation jurisdiction retained by the Bankruptcy Court.

6.     The Debtors reserve and shall have the right to amend and modify this list of Retained Actions at any time prior to the Effective Date by filing a notice with the Court and serving each of the other parties or potential parties to the Retained Action.

**M.     Continuing Powers and Authorities Over Retained Actions.**

1.     Subject only to the further provisions hereof, the Debtors shall retain full and complete power and authority prosecute, settle or release any Retained Action, including without limitation, the right to request mediation or arbitration of any Retained Action.

2.     Without further Court approval, the Debtors' Counsel or any other attorney approved as special counsel with respect to any Retained Action during this case may represent the Debtors in connection with any retained Proceeding or Cause of Action on the terms approved by the Court in its order authorizing the retention of Debtor's Counsel.

3.     Subject to Court approval, the Debtors may retain other counsel to represent the Debtors in connection with a Retained Action on such terms and conditions as the Court may approve.

4.     No Retained Action shall be settled without prior Court approval pursuant to Bankruptcy Rule 9019.

**N.     Use of Proceeds of Retained Actions.**

1.     Subject to Court approval, the Debtors shall first pay the attorneys' fees, and any other costs or expenses incurred in connection with any recovery made on account of a Retained Action, whether by settlement, the collection of a judgment or otherwise, to the extent approved by the Court, except as otherwise expressly provided for herein in the case of the Slate Settlement and the Reid Personal Injury Claim.

    **2.**      The proceeds of the Slate Settlement and the net proceeds of the Reid Personal Injury Claim shall be disbursed as provided for in this Plan.

    **3.**      The net proceeds of any other Retained Action (if any) shall constitute disposable income within the meaning of this Plan.  Such proceeds shall be disbursed to creditors holding Allowed Claims in accordance with the provisions of this Plan.  In the event that the Debtors have paid all Allowed priority and non-priority unsecured claims at the time of any recovery, the remaining proceeds shall belong to the Debtors.

    **4.**      Should there be any remaining balance, it shall be remitted to and become the property of the Debtors.

    **O.**    **All Other Actions Released.**  Except for the Retained Actions, the entry of the order confirming this Plan shall automatically discharge, release and relinquish any other causes of action which the Debtors have or may have against any other person or entity.

    **P.**    **Judicial Mediation.**  In accordance with the Alternative Dispute Resolution Act of 1998, 28 U.S.C. §§ 651-658 and the Bankruptcy Rules and Local Bankruptcy implementing such statute, the Debtors or any party in interest may move the Bankruptcy Court for an order referring any dispute concerning the amount of a claim, the value of Collateral or the terms of any Plan Document to judicial mediation before the Honorable Peter G. Cary, United States Bankruptcy Court for the District of Maine or such other bankruptcy judge as the Bankruptcy Code may designate.  Any non-moving party may object to the requested Judicial Mediation.  In the event the Judicial Mediation shall not resolve the dispute, the Bankruptcy Court shall hear and resolve the disputed  issues at the request of any party to such Mediation.

    **Q.**    **Financial Covenants.**  During the term of this Plan:

    **1.**      The Debtors shall manage and conduct its business and affairs in accordance with the terms of this Plan, the order confirming this Plan, and applicable federal and state law.

    **2.**      The Debtors shall keep true, complete and accurate records and books of account on a consistent basis, which fairly depict the results of the Debtors' business and permit any creditor holding an Allowed Claim at the Debtors' business premises at any mutually convenient time during the normal business week.

3.      The Debtors shall not pay to themselves or any other insider any salary, benefits or other compensation in excess of the lesser of the amount shown in the Financial Projections attached as Exhibit D, except as specifically permitted by this Plan.

**R.      Equity Holder Tax Distributions.**  Notwithstanding any other provision hereof, the Debtors may distribute to the equity holder sufficient money to pay any federal or state tax liabilities imposed on the equity holder by reason of the Debtors' revenues.

## ARTICLE IX: GENERAL PROVISIONS

**A.      Additional Definitions and Rules of Construction**.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, including without limitation, the following: affiliate, after notice and hearing, claim, claim against the Debtors, creditor, debt, equity security, equity security holder, insider, insolvent, judicial lien, lien, may, or, person, security interest, statutory lien, and transfer.

**B.      Effective Date**.  The Effective Date of this Plan is the first business day following the date that is 14 days after the entry of the order confirming this Plan.

**C.      Severability**.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**D.      Binding effect**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**E.      Captions**.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**F.      Controlling effect**.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New Hampshire govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

**G.      Retention of Jurisdiction**.  The Court shall retain jurisdiction over this case, including without  limitation, the following matters to the extent consistent with its customary and usual practice:

1.       Chapter 5 actions and other rights created by Bankruptcy Code, adversary Proceedings, contested matters, compromises and/or abandonments of any property of the Estate involving or pertaining to the implementation of this Plan, including those over which the Court has or would have had jurisdiction, but for final Confirmation.

2.       Any pending Proceedings and Proceedings initiated following Confirmation based on a retained cause of action.

3.       Applications for Awards of Administrative Expenses.

4.       The interpretation, implementation or enforcement of this Plan.

## ARTICLE X: DISCHARGE

A.       If the Debtors' Plan is confirmed under § 1191(a), on the Effective Date of this Plan, the Debtors will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtors will not be discharged of any debt: (i) imposed by this Plan; (ii) the non-dischargeable claims held by Mr.  Cheesman as set forth above in Class 6; or (iii) to the extent provided in § 1141(d)(6).

B.       If the Debtors' Plan is confirmed under § 1191(b), with the exception of the $100,000 discharged by agreement as set forth in Class 6, the Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtors will not be discharged from any debt:

1.       on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

2.       excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, including the debt held by Mr. Cheesman in the amount of $106,377.25 plus 50% easement expenses as set forth in Class 6.

## ARTICLE XI: OTHER PROVISIONS

A.       **Request for Confirmation.**  Pursuant to Code Section 1191, the Debtors request the Bankruptcy Court to confirm this Plan as permitted by such Section if and to the extent necessary.

Debtor Name:  Jacqueline Cash and Eric Reid                                    Case Number: 21-10475-BAH

    **B.**     **Plan is Fair and Equitable.**  This Plan does not discriminate unfairly and is fair and equitable with respect to each Class of claims or equity interests that is impaired and has not accepted this Plan for the following reasons, among others:

    **1.**     With respect to each Class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title because (a) the creditors in each Class retain their first priority liens on the Collateral claimed by them to the extent of the Allowed amount of their secured claims and (b) As of the Effective Date of the plan —

    **a.**     The plan provides that all of the projected disposable income of the Debtors to be received in the 3-year period, or such longer period not to exceed 5 years . . . , beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

    **b.**     The value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the Debtors.

    **2.**     As shown by Exhibit D:

    **a.**     The Debtors will be able to make all payments under this Plan; or

    **b.**     There is a reasonable likelihood that the Debtors will be able to make all payments under the plan; and the plan provides appropriate remedies in the event that the payments are not made.

    **3.**     Confirmation of this Plan is in the best interests of creditors within the meaning of the Code.  Determining whether or not this Plan satisfies the "best interests test" requires a comparison of the dividends are expected to receive under this Plan to the distributions that impaired creditors would receive in the hypothetical liquidation described earlier in this Plan as shown by Exhibits A and B.  Attached to this Plan as Exhibit C is the Comparison of Plan Dividends to Projected Liquidation Distributions Based on Estimated Allowed Claims.  It compares in a tabular format the dividends projected to be paid to holders of Allowed Claims in each Class pursuant to this Plan, as shown by Exhibit A, to the amount or liquidation distribution that the Class would receive from the hypothetical liquidation of the Debtors' property, as shown by Exhibit B.  A

liquidation is an unmitigated disaster.  Except for Farm and Citizens, all creditors holding Allowed

Secured Claims will recover more money under this Plan than through a liquidation.


Respectfully submitted,

Jacqueline Cash and Eric Reid,
Plan Proponents

DATED: June 8, 2022                              /s/ William S.  Gannon
                                                 William S.  Gannon, BNH 01222 (NH)

                                                 Counsel for

                                                 **JACQUELINE CASH and ERIC REID**

                                                 WILLIAM S.  GANNON PLLC
                                                 740 Chestnut St.
                                                 Manchester NH 03104
                                                 PH: 603-621-0833
                                                 FX: 603-621-0830
                                                 bgannon@gannonlawfirm.com


CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing Plan of Reorganization on all persons
and entities named on the CM/ECF Electronic Service List by causing it to be filed electronically
via the CM/ECF filing system.


DATED: June 8, 2022                              /s/ Beth E. Venuti
                                                 Beth E. Venuti, Paralegal