UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                        CHAPTER 11

**JACQUELINE CASH and**                                      Case No. 21-10475-BAH
**ERIC REID**

      Debtors

## SUBCHAPTER V PLAN GLOSSARY

**1.** "42 North Dental" means 42 North Dental, LLC, a dental practice located in Waltham, Massachusetts.

**2.** "Actions" means and includes (**a**) pending Proceedings and (**b**) Causes of Action.

**3.** "Allowed Claim" means a claim with respect to which (**a**) the claim has been allowed by this Plan or in accordance with the procedures set forth herein, or (**b**) neither a Debtor nor any other party in in interest has filed an objection to such claim prior to the date set therefor in the Confirmation Order or (**c**), if an objection to such claim has been filed, an Order has been entered by the Court under Section 502 of the Code allowing such claim in whole or in part.

**4.** "Allowed Creditor" means a creditor holding an Allowed Claim.

**5.** "Allowed Brigham Secured Claim" means the non-recourse, junior secured claim in the amount of $225,000 to be allowed Brigham pursuant to the Plan.

**6.** "Allowed Citizens Mortgage Claim" means the secured claim to be allowed Citizens.

**7.** "Allowed Farm Secured Equipment Claim" means the secured claim to be allowed Farm.

**8.** "Allowed Minor Secured Claim with Modified Maturity Dates" means the secured claims to be allowed to Bank of America and South Shore Bank/Bankers Healthcare Group.

**9.** "Allowed Minor Secured Claim without Modified Maturity Dates" means the secured claims to be allowed to Harley Davidson Credit Corp. and USAA Federal Savings Bank.

10. "Allowed Secured Claims" means and includes the secured claims to be allowed any and all secured creditors.

11. "Application" means an application for arbitration that, in the event that the parties do not reach an agreement during the mediation, any party to the mediation may file with the United States District Court for the District of New Hampshire pursuant to the Federal Arbitration Act within 5 days from the conclusion of the mediation.

12. "Available Disposable Income" when used in reference to a class, means the amount of disposable income available for distribution to such class after all dividends due classes entitled to preference and priority over such class with respect to the payment of dividends under the Plan have been paid in full, including any prepayments provided for or permitted by the Plan.

13. "Available Disposable Income Class" means that dividends due creditors holding Allowed Claims in that class will be paid only from Available Disposable Income if and to the extent available for such class on or as of the date that a dividend payment may become due such class at the end of any calendar year.

14. "Bank of America Collateral" means the 2012 Nissan Xterra and the 2015 Ford F350.

15. "Bankruptcy Code" means 11 U.S.C. §101 *et seq.* as now existing and as amended during the Case.

16. "Bankruptcy Code Section" means the referenced section of the Code.

17. "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Hampshire.

18. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

19. "Bankruptcy Schedules" means the Debtors' Schedules filed by the Debtors and any and all amendments thereto.

20. "Bankruptcy SOFA" means the Debtors' Statement of Financial Affairs filed by the Debtors and any and all amendments thereto.

21. "Brigham "and "Brigham Trust" means Peter Brigham, as an individual and Peter Brigham, as trustee and sole beneficiary of the Peter Brigham 401(k) Plan and Trust, respectively.

22. "Brigham Claim" means the disputed claim in the amount of $249,188.50 asserted by the Peter Brigham 401(k) Plan and Trust in Proof of Claim 12.

23. "Brigham Collateral" means and includes the following real and personal property (1) the Homestead Property subject to any lien for unpaid real estate taxes, the senior liens held by Farm and the Debtors' homestead interest therein, (2) the Rental Property and the Lot subject to any lien for unpaid real estate taxes, the senior lien held by Citizens Bank and (3) the Lot subject to subject to any lien for unpaid real estate taxes and the senior liens held by Farm.

24. "Brigham Proof" means Proof of Claim 12.

25. "Brigham Transaction Documents" means and includes the documents attached to the Brigham Proof and those executed in connection with the loan, which is the basis of the Brigham Proof.

26. "Case" means the bankruptcy case identified in the caption of this Glossary.

27. "Causes of Action" means, subject to the terms of the Plan, the demands, causes of action, equitable and statutory rights, actions, civil actions, equity proceedings, suits and other administrative, alternative dispute resolution proceedings and other claims and remedies therefor of any and every nature whatsoever, which the Debtors shall retain pursuant to the Plan.

28. "Certificate of Title" means a certificate of title to a motor vehicle.

29. "Chapter 5 Actions" mean and includes Causes of Action arising under Chapter 5 of the Code and applicable state law incorporated therein by reference.

30. "Cheesman" means Craig R. Cheesman.

31. "Cheesman Agreement" means the pre-petition Agreement entered into by the Debtors and Cheesman attached to the Cheesman Proofs, which is the basis of the Cheesman Claims.

32. "Cheesman Allowed Claim" means the claim to be Allowed Cheesman pursuant to the Plan.

33. "Cheesman Claims" means and includes (a) the disputed secured claim and unsecured claim in the amount of $146,377.25 and $60,000 asserted by Cheesman in Proofs of Claim 19 and 20.

34. "Cheesman Easement" means the easements appurtenant over the historic logging path on the Homestead Premises and the adjacent premises owned by Cheesman, to be granted by the Debtors and Cheesman to each other pursuant to the Plan, which are depicted generally on drawings and mark-ups reviewed by the Debtor and Cheesman, shall be more than 12' in width and which may be used for the benefit of access to, from and across Cheesman's adjacent premises.

35. "Cheesman Plan Mortgage" means the third priority, statutory power of sale mortgage of the Lot to be granted Cheesman by the Debtor pursuant to the Plan, which is junior and inferior to all liens senior to such mortgage which are preserved by this Plan, including without limitation, the mortgages held by Farm and the Brigham Trust.

36. "Cheesman Plan Note" means the full recourse, non-dischargeable promissory note to be executed and delivered to Cheesman pursuant to the Plan.  Cheesman on the Effective Date.

37. "Cheesman Proofs" means and includes (a) the disputed secured claim and unsecured claim in the amount of $146,377.25 and $60,000 asserted by Cheesman in Proofs of Claim 19 and 20.

38. "Cheesman Secured Claim' means the claims included in Class 6.

39. "Cheesman Secured Claim Class" means Class 6.

40. "Cheesman Transaction Documents" means and includes the documents attached to the Cheesman Proofs.

41. "Cheesman Unsecured Claim" means the claims included in Class 9.

42. "Cheesman Unsecured Claim Class" means Class 9.

43. "Citizens" means Citizens Bank, N.A.

44. "Citizens Allowed Secured Claim" means the claim to be allowed to Citizens Bank, N.A. in the amount provided for or determined in accordance with the Plan.

45. "Citizens Claim" the claim asserted by Citizens in Proof of Claim No. 18 filed by Citizens.

46. "Citizens Mortgage Collateral" means the real property located in Epsom, New Hampshire commonly known and numbered as 111 Lockes Hill Road.

47. "Citizens Proof" means Proof of Claim No. 18 filed by Citizens.

48. "Citizens Transaction Documents" means and includes all of the documents executed in connection with the mortgage loan that gave rise to the Citizens Claim.

49. "Class" means and includes each class or classes of creditors or holders of equity interests created by the confirmation of the Plan.

50. "Class 1" means " means the Priority Administrative Expense Claims Class.

51. "Class 2" means the Farm Secured Equipment Claims Class.

52. "Class 3" means the Farm Secured Mortgage Claims Class.

53. "Class 4" means the Citizens Secured Mortgage Claim Class.

54. "Class 5" means the Brigham Trust Secured Mortgage Claim Class.

55. "Class 6" means the Cheesman Secured Claim Class.

56. "Class 7A" means the Minor Secured Claims with Modified Maturity Dates Class.

57. "Class 7B" means the Minor Secured Claims without Modified Maturity Dates Class.

58. "Class 8" means the General Unsecured Claims Class.

59. "Class 9" means the Cheesman Unsecured Claim Class.

60. "Code" means 11 U.S.C. §101 *et seq.* as now existing and as amended during the Case.

61. "Code Section" means the referenced section of the Code.

62. "Collateral" means and includes the real or personal property securing the payment, performance or satisfaction of an Allowed Secured Claim within the meaning of Code Section 506.

63. "Collateral Value" means the value of an Allowed Secured Creditor's interest in the Debtor's interest in the Collateral as proposed by the Debtors in the Plan in the absence of an objection or as agreed to by the parties or set by the Bankruptcy Court pursuant to Bankruptcy Code Section 506.

64. "Confirmation" means the entry of a Confirmation Order that has become final and non-appealable.

65. "Confirmation Date" means the date on which the order confirming the Plan shall become final and non-appealable.

66. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Code after such order has become final and non-appealable.

67. "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Hampshire.

68. "Debtors' Counsel" means William S. Gannon and William S. Gannon, PLLC.

69. "District Court" means the United States District Court for the District of New Hampshire.

70. "Effective Date" means the first business day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

71. "Cheesman Equitable Rights" means the equitable rights that Cheesman claims to hold to (a) the conveyance of an appurtenant easement over the Homestead Premises approximately 12' in width and (b) the conveyance of the Lot, that are junior, inferior and subordinate to any senior liens of record, including without limitation, the liens held by Farm and Brigham Trust.

72. "Epsom" means the Town of Epsom, New Hampshire.

73. "Executive Summary Table" means the chart so titled in the Disclosure Statement.

74. "Exhibits" means and includes the Exhibits included in the Appendix accompanying the Plan and Disclosure Statement.

75. "Exhibit A" means the exhibit titled *Class, Creditor, Claim and Projected Dividend Summary* which is included in the Confirmation Appendix filed in connection with the Plan.

76. "Exhibit B" means the exhibit titled *Hypothetical Liquidation Summary Based on*

*Significant Property of Estate* which is included in the Confirmation Appendix filed in connection with the Plan.

  77. "Exhibit C" means the exhibit titled *Comparison of Projected Plan Dividends to Projected Liquidation Distributions Based on Estimated Allowed Claims* which is included in the Confirmation Appendix filed in connection with the Plan.

  78. "Exhibit D" means the exhibit titled *Financial Projections* which is included in the Confirmation Appendix filed in connection with the Plan.

  79. "Farm" means Farm Credit East, ACA.

  80. "Farm Claims" means the claims asserted by FCE in Proof of Claim 17-1.

  81. "Farm Collateral Value" means the value of the class creditor's interest in the Debtor's interest in the class collateral based on the reorganization and liquidation values of the class collateral given herein or determined in accordance with Code Section 506.

  82. "Farm Equipment Collateral" means and includes the following equipment: 2006 Daewoo and 2007 Kawasaki 70 TMV Loader.

  83. "Farm Patronage Credit" means the non-cash credit earned by the Debtors based on payments made to Farm.

  84. "Farm Proof" means Proof of Claim 17-1.

  85. "Farm Secured Equipment Claim" means the secured claim held by Farm that arose directly from, out of or incidental to the loan and re-advance made to EJ Farms, LLC and the Debtors to purchase the 2006 Daewoo and the 2007 Kawasaki 70 TMV Loader described in the class proof.

  86. "Farm Secured Equipment Claim Transaction Documents" means and includes the Demand Promissory Note made by them for the payment of the original principal sum of $78,000 dated May 7, 2019, the Loan Agreement dated May 7, 2016, the Security Agreements dated February 2 and May 7, 2016 and any financing statement filed to perfect the liens asserted by Farm.

  87. "Farm Secured Mortgage Claim" means the claim or claims in the approximate amount of $403,064.29 asserted by Farm in the Farm Proof of Claim, except for the Farm Secured

Equipment Claim.

88. "Farm Mortgage Collateral" means the Homestead Property and the Lot.

89. "Farm Mortgage Transaction Documents" means the Demand Promissory Note made by them for the payment of the original principal sum of $78,000 dated May 7, 2019, the Loan Agreement dated May 7, 2016, the Security Agreements dated February 2 and May 7, 2016 and any financing statement filed to perfect the liens asserted by Farm any and all other documents attached to the Farm Proof, except for the Farm Secured Equipment Claim Transaction Documents.

90. "FCE" means Farm Credit East, ACA.

91. "Federal Arbitration Act" means 9 U.S.C. § 10(a).

92. "Final Decree" means the Final Decree entered by the Bankruptcy Court in this Case.

93. "Financial Projections" means Exhibit D

94. "FRBP" means the Federal Rules of Bankruptcy Procedure.

95. "General Unsecured Creditors" means and includes creditors that assert non-priority unsecured claims against the Debtors, including without limitation, the creditors named and identified in Exhibit A as "General Unsecured Creditors," except for those specifically placed in a different Class.

96. "General Unsecured Claims" means and includes all non-priority unsecured claims asserted against the Debtors, including without limitation, the claims listed in Exhibit A, General Unsecured Creditors and Claims, except for those specifically placed in a different Class.

97. "Glossary" means this Glossary.

98. "Harley" means Harley Davidson Credit Corp.

99. "Harley Claims" means the secured claim asserted by Harley Davidson Credit Corp. in Proof of Claim 10.

100. "Harley Collateral" means the Collateral claimed by Harley in the Harley Proof and identified in Exhibit B.

101. "Harley Proof" means Proof of Claim 10.

102. "Homestead Premises" means the real property located in Epsom, New Hampshire commonly known and numbered as 102 Lockes Hill Road.

103. "Hypothetical Liquidation" means the hypothetical liquidation of the property of the estate in a Chapter 7 case.

104. "Hypothetical Liquidation Analysis" means the projected results of a hypothetical liquidation of the property of the estate in a Chapter 7 case described in Exhibit B, Hypothetical Liquidation Analysis.

105. "LBR" means the Local Rules of the Bankruptcy Court.

106. "Local Bankruptcy Rules" means the Local Rules of the Bankruptcy Court.

107. "Loan Documents" means and includes each and every document executed by the Debtors and a lender in connection with a loan Transaction.

108. "Lot" means the real property located in Epsom, New Hampshire commonly known and numbered as Lockes Hill Rd Lot 13 1-2.

109. "Mandatory Dividend Payment" means the fixed dividends payable to creditors in a Mandatory Payment Class, which is not dependent on the amount of the Debtors' disposable income or Available Disposable Income.

110. "Mandatory Payment" means the fixed dividends payable to creditors in a Mandatory Payment Class, which is not dependent on the amount of the Debtors' disposable income or Available Disposable Income.

111. "Mandatory Payment Class" means that the dividends due creditors holding allowed claims in the class must be paid within 15 days of the due date thereof without regard to the amount of the Debtors' Available Disposable Income on the payment date.

112. "Judicial Mediation" means a judicial mediation requested by a Plan Party pursuant to the Plan.

113. "Minor Secured Creditor Collateral" means the Bank of America Collateral and the South Shore Bank/Bankers Healthcare Group Collateral, collectively.

114. "Minor Secured Claims with Modified Maturity Dates" means the secured claims asserted by Bank of America, Proof of Claims 4-1 and 5-1 in the respective amounts of $3,025.02 and $14,647.59, and South Shore Bank/Bankers Healthcare Group, Proof of Claim 15 in the amount of $109,219.39 if and to the extent secured by valid and enforceable, perfected liens on property of the estate and qualifying as secured claims within the meaning of Code Section 506.

115. "Minor Secured Creditors with Modified Maturity Dates" means Bank of American and South Shore Bank/Bankers Healthcare Group.

116. "Minor Secured Claims without Modified Maturity Dates" means the secured claims, if and to the extent secured by valid and enforceable, perfected liens on property of the estate and qualifying as secured claims within the meaning of Code Section 506, asserted by (a) Harley Davidson Credit Corp., Proof of Claim 10 in the amount of $34,074.73 and (b) USAA Federal Savings Bank, Proof of Claim 8 in the amount of $31,919.81.

117. "Minor Secured Creditors without Modified Maturity Dates" means Harley Credit and USAA.

118. "Month 1" means the first month of the Plan Term.

119. "New Hampshire Uniform Fraudulent Transfer Act" means RSA 545-A..

120. "Petition" means the Voluntary Petition, including the Statements, Schedules and Exhibits thereto, filed by the Debtors on August 4, 2021, as filed and as amended from time to time.

121. "Petition Date" means August 4, 2021.

122. "Plan" means the plan of reorganization of the Debtors proposed by the Debtors to which this Glossary is attached, as modified from time to time.

123. "Plan Documents" means and includes each document executed or delivered by a Plan Party for the purpose of implementing the Plan.

124. "Plan Party" means and includes the Debtors and each creditor and other party in interest affected by the Plan.

125. "Plan Support Agreement" means and includes each agreement to support the confirmation of this Plan entered into by the Debtors and a Plan Party.

126. "Plan Term" means a period of 3 years, beginning on the 30th day following the

Effective Date.

127. "Plan Year" means each 12 month period during the Plan Term, beginning on the first day of the Plan Term and ending the day preceding an anniversary of such date.

128. "Priority Administrative Expense Claims" means the claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code to the extent of the priority afforded such claims.

129. "Priority Administrative Expense Creditor" means all creditors holding claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code to the extent of the priority afforded such claims.

130. "Priority Tax Claims" means and includes the claims included in Priority Tax Claim to be created by the Plan.

131. "Priority Tax Creditors" means all creditors holding or asserting claims included in Priority Tax Claim to be created by the Plan.

132. "Proceedings" means and includes administrative, arbitration and mediation proceedings, civil actions, equity proceedings, suits and other judicial proceedings and other proceedings of any and every nature.

133. "Real Properties" means the Homestead Premises, the Rental Property and the Lot, collectively.

134. "Reid Personal Injury Claim" means Mr. Reid's insured personal injury claim against Bechara El-Khoury arising from an automobile accident.

135. "Rental Property" means the real property located in Epsom, New Hampshire commonly known and numbered as 111 Lockes Hill Road.

136. "Retained Actions" the to be retained by the Debtors pursuant to the Plan.

137. "Slate" means Chinn Legal Group, LLC, doing business as Slate Legal Group.

138. "Slate Settlement" means the settlement of the Slate Turnover Action described in the Settlement Agreement entered into by and between the Debtors and Chinn Legal Group, LLC, dba Slate Legal Group, which the Bankruptcy Court approved pursuant to FRBP 9019.

139. "Slate Settlement Proceeds" means the proceeds that Slate refunded to the Debtors'

bankruptcy estate in the amount of $48,786.06.

140. "Slate Turnover Action" means the turnover action commenced by the Debtors against Slate pursuant to Section 542 of the Code captioned *Jacqueline Cash and Eric Reid v. Chinn Legal Group, LLC d/b/a Slate Legal Group*, Adv. Pro. 21-01033-BAH.

141. "South Shore/Bankers" means South Shore Bank and Bankers Healthcare Group.

142. "South Shore Bank/Bankers Collateral" means the All Asset Lien Property described in Exhibit B, Hypothetical Liquidation Analysis.

143. "Subchapter V" means Subchapter V of Chapter 11 of the Bankruptcy Code.

144. "Subchapter V Trustee" means James S. LaMontagne, Esq.

145. "Transaction Documents" means and includes the documents executed and delivered by the Debtors and other parties to a business transaction that gave rise to a claim, including without limitation, the documents evidencing a loan, true or financing lease or a sale of goods or the provision of services.

146. "United States Trustee" means the Office of the United States Trustee.

147. "UST" means the Office of the United States Trustee.

148. "USAA" means USAA Federal Savings Bank.

149. "Wall Street Journal Prime Rate" means the rate of interest published by the Wall Street Journal Prime Rate.

150. "WSJ Prime Rate" means the rate of interest published by the Wall Street Journal Prime Rate.

151. "Working Capital Reserve" means the plan implementation reserve which the Debtors shall retain.